# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:17-cv-131-RJC-DCK

| PRASSAS CAPITAL, LLC, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) **ORDER** |
| BLUE SPHERE CORPORATION, | ) |
| Defendant. | ) |

**THIS MATTER** is before the Court on Blue Sphere Corporation's ("Defendant") Motion for Judgment on the Pleadings, (Doc. No. 18); their Memorandum in Support, (Doc. No. 19); Prassas Capital, LLC's ("Plaintiff") Memorandum in Opposition, (Doc. No. 27); Defendant's Reply, (Doc. No. 28).

## I. BACKGROUND

### A. Procedural Background

On March 15, 2017, Plaintiff filed their complaint alleging that Defendant breached its contract with Plaintiff which required the payment of a financing fee in return for Plaintiff's help arranging a financing agreement. (Doc. No. 1 at 2). Defendant then filed an answer accompanied by counterclaims. (Doc. No. 7). In response, Plaintiff filed a Motion to Dismiss Defendant's Counterclaims. (Doc. No. 13). Afterward, Defendant submitted its Motion for Judgment on the Pleadings on June 2, 2017. (Doc. No. 18). The Court has since ruled in Plaintiff's favor on its Motion to Dismiss Defendant's Counterclaims and now turns to Defendant's Judgment on the Pleadings as it is ripe and ready for adjudication.

B.  Factual Background

The facts alleged in Plaintiff's Complaint are as follows.  Plaintiff is an Arizona limited liability company with its principle place of business in Arizona.  (Doc. No. 1 ¶ 1).  Defendant is a corporation organized under the laws of Nevada but maintains its principle place of business in in Mecklenburg County, North Carolina.  (Id. ¶ 2); (Doc. No. 7 at 2).  Plaintiff's Complaint alleges that it entered into an agreement ("the Agreement") with Defendant around December 30, 2013.  (Doc. No. 1-1).  The Agreement provided that Plaintiff would aid Defendant with financial advisory services in relation to two waste-to-energy projects Defendant aimed to complete.  (Doc. No. 1 ¶ 6).  These projects would take place in Mecklenburg County, North Carolina ("NC Project") as well as Johnston, Rhode Island ("RI Project").  (Id.).  Plaintiff asserts that the terms of the Agreement provided that, upon the closing of any financing agreement, Plaintiff would be owed a financing fee.  (Id. ¶ 6).

After the Agreement was finalized, Plaintiff alleges that both the NC and RI Projects received financing and that, pursuant to the Agreement, Plaintiff is now owed their financing fee.  (Id. ¶¶ 8–9, 11–12).  The NC Project amounted to $1,640,651 under the Agreement while the RI Project amounted to $800,000.  (Id. ¶¶ 9, 12).  Of these fees, Plaintiff states that Defendant paid part, but not all, of the required fees.  Of the $1,640,651 owed for the NC Project, Plaintiff claims that Defendant paid $300,000, leaving an outstanding balance of $1,340,651.  (Id. ¶ 10).  Of the $800,000 owed for the RI Project, Plaintiff claims that Defendant was unable to pay that fee and, as a result, a second agreement was made between the parties to parse out the terms of the project's payment of financing fees.  (Id. ¶ 13); see also (Doc. No. 1-2).  This second agreement ("Letter Agreement") provided that Defendant agreed to: (1) pay Plaintiff the $800,000 in installments; and (2) grant 7,000,000 warrants to purchase 7,000,000 shares of common stock in Defendant's

corporation. (Id. ¶ 14). To date, Plaintiff states that Defendant paid a total of $533,333.33 toward the RI Project balance, leaving $266,666.67 unpaid. (Id. ¶ 16).

Plaintiff allege that Defendant not only failed to pay the requisite fees for the NC Project under the Agreement, it then breached the Letter Agreement by failing to make payment installments. (Id. ¶ 17). As a result, Plaintiff claims that it began demanding payment from Defendant to pay the balance of both projects. (Id.). In response, Plaintiff claims that Defendant, through its CEO, Shlomo Palas, reaffirmed its obligations to pay Plaintiff and asked for further accommodations due to expected future sources of revenue. (Id.). According to Plaintiff, the last affirmation from Palas took place as recently as January 25, 2017. (Id.). Today, Plaintiff states that Defendant has yet to pay the remaining balances on the NC and RI Projects. (Id. ¶ 18). Plaintiff believes that Palas' promise to repay Plaintiff were false and made with the intent to delay Plaintiff's action to collect. (Id.). Plaintiff brings this action to recover the balance remaining under both agreements.

Defendant contests Plaintiff's explanation of Defendant's obligations. In fact, Defendant claims that Plaintiff wrongfully demanded payment under the terms of the two agreements. First, Defendant claims that neither agreement is valid. To begin with, Defendant points out that Plaintiff's attached exhibit of the first financial agreement was not signed. (Doc. No. 7 ¶ 6). Plaintiff has since produced a signed copy. (Doc. No. 15-1). Second, Defendant contends that the agreements were void under the Securities Exchange Act ("SEA"). Defendant claims that, under the SEA, Plaintiff acted as a "broker" in "encouraging, soliciting, and facilitating financing transactions that constituted securities" under the act. (Doc. No. 7 ¶¶19–22). Defendant concludes that, because Section 15(a) of the SEA requires brokers to be registered, and because Plaintiff is not a registered broker, Section 29(b) of the SEA voids the agreements at issue. (Id.).

Even if the agreements were valid, Defendant states that the terms of the agreements were never fulfilled. Specifically, Defendant claims that a "closing" never occurred as defined by the agreement, thus preventing the triggering of paying a financial fee to Plaintiff. (Id. ¶ 7). Rather, "closing" was defined as the "receipt of funds in cash by the Company." (Id. ¶ 10). Because Defendant never received "cash," a closing never occurred and Plaintiff was never owed a financing fee. (Id. ¶ 14). The only parties to receive cash, Defendant claims, were two limited liability companies that were neither subsidiaries nor affiliates to Defendant. Defendant also claims that it never received funds for "full financing" of either the NC or RI Projects. (Id. ¶ 11).

Defendant also makes the argument that Plaintiff misled Defendant. While Defendant admits to paying portions of Plaintiff's alleged financing fees, it claims that any payment was mistaken and resulted from Plaintiff's "wrongful, negligent, and/or fraudulent demand for payment under the terms of the Agreement." (Id. ¶¶ 10, 15). In making this argument, Defendant characterizes Plaintiff as fiduciary of sorts, stating that Plaintiff, "a sophisticated financial services company, and fiduciary to [Defendant]," was "well familiar with its own engagement agreements [and] wrongfully, negligently, and/or fraudulently demanded payment from [Defendant] under the Agreement." (Id. ¶ 15). Because Defendant lacked "similar sophistication and familiarity with the Agreement," Defendant claimed it mistakenly paid up to $833,333.00 to Plaintiff when that amount was never actually due. (Id. ¶ 16).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). A motion for judgment on the pleadings is governed by the same standard as a motion to dismiss brought under Rule 12(b)(6). Occupy Columbia v. Haley, 738 F.3d 107,

115 (4th Cir. 2013). That standard tests "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). The complaint will survive if it contains enough facts "to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, (2007)). Facial plausibility means allegations that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Specific facts are not necessary; the statement need only "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Twombly, 550 U.S. at 545 (quoting Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 775 (1984)). Additionally, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (quoting Twombly, 550 U.S. at 555-56). Nonetheless, a court is not bound to accept as true legal conclusions couched as factual allegations. Papasan v. Allain, 478 U.S. 265, 286 (1986). Courts cannot weigh the facts or assess the evidence at this stage, but a complaint entirely devoid of any facts supporting a given claim cannot proceed. Potomac Conference Corp. of Seventh-Day Adventists v. Takoma Academy Alumni Ass'n, Inc., 2 F. Supp. 3d 758, 767-68 (D. Md. 2014). Furthermore, the court "should view the complaint in the light most favorable to the plaintiff," drawing reasonable inferences in its favor. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). Judgment on the pleadings may be granted when the undisputed facts show that the moving party is entitled to

judgment as a matter of law. Bradley v. Ramsey, 329 F. Supp. 2d 617, 622 (W.D.N.C. 2004) (citing MOORE'S FEDERAL PRACTICE, § 12.38 (3d ed.)).

A court may consider the complaint, answer, and any materials attached to those pleadings or motions for judgment on the pleadings "so long as they are integral to the complaint and authentic." Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009); see also FED. R. CIV. P. 10(c) ("[A]n exhibit to a pleading is part of the pleading for all purposes."). Any factual allegations contained in an answer are only taken as true if they do not conflict with the complaint and have not been denied by plaintiff. Alexander v. City of Greensboro, 801 F. Supp. 2d 429, 433 (M.D.N.C. 2011) (quoting Jadoff v. Gleason, 140 F.R.D. 330, 331 (M.D.N.C. 1991)). When an answer does not require a responsive pleading, the allegations are assumed denied. Id. (citing Jadoff, 140 F.R.D. at 332); FED. R. CIV. P. 8(b)(6).

### III. DISCUSSION

In its Motion for Judgment on the Pleadings, Defendant argues that Plaintiff's claims fail because: (1) Plaintiff admits to violating the SEA, thus voiding the Agreement and Letter Agreement; (2) Plaintiff failed to plead that Defendant or any of its affiliates, successors, or subsidiaries received "cash" under the terms of the agreements that would otherwise trigger the payment of a financing fee; (3) Defendant over-paid any amount actually due to Plaintiff; and (4) Plaintiff failed to plead a claim for declaratory judgment regarding its rights to 7,000,000 warrants of stock due to a lack of controversy. (Doc. No. 19 at 2, 6, 8–9). In response, Plaintiff asserts that: (1) it sufficiently alleged facts to show the existence of a binding and enforceable contract, performance of that contract, and a subsequent breach by Defendant; (2) it did not admit to violating the SEA within its pleadings; (3) Defendant merely asserts affirmative defenses that do

not entitle it to a judgment as a matter of law; and (4) there is, in fact, a controversy regarding the rights to the stock warrants described in the Letter Agreement. (Doc. No. 20 at 1–2, 9).

    A. Plaintiff's Breach of Contract Claim

Defendant argues that Plaintiff failed to allege a breach of contract claim because the Agreement and the Letter Agreement are unenforceable under the SEA. (Doc. No. 19 at 6). Defendant maintains, as it did in its counterclaims, that Plaintiff violated Section 15(a)(1) of the SEA when it provided financial advisory services to Defendant without first registering as a broker/dealer. (Id.). Defendant interprets Plaintiff's allegations as admissions that Plaintiff exceeded the conduct allowed for under the limited exceptions to the registration requirement, thus rendering the agreements void on their face. (Id. at 7–8).

In Foundation Ventures, LLC v. F2G, LTD, 2010 U.S. Dist. LEXIS 81293 (S.D.N.Y. Aug. 11, 2010), the Southern District of New York broke down what defines a "broker" under the SEA by asking:

> [W]hether the purported broker: (1) is an employee of the issuer of the securities; (2) receives transaction-based commission as opposed to a salary; (3) sells, or previously sold, the securities of other issuers; (4) participates in negotiations between the issuer and the investor; (5) makes valuations regarding the merits of the investment or gives advice; and (6) finds investors actively rather than passively.

Id. at *14-15. On the other hand, the Southern District of New York defined a "Finder" as a party who "finds potential buyers or sellers, stimulates their interest, and brings parties together, while a broker brings the parties to an agreement on particular terms." Id. at *16 (quoting Jones v. Whelan, 2002 U.S. Dist. LEXIS 5403 (S.D.N.Y. Mar. 29, 2002)). Citing the above authority, Plaintiff argues that these are fact-intensive inquiries warranting the survival of Plaintiff's claims.

Furthermore, Plaintiff asserts that its Complaint does not admit sufficient facts for the Court to conclude that it acted as a broker rather than a finder for Defendant. (Doc. No. 27 at 11–12).

To begin with, "[t]he elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." Poor v. Hill, 530 S.E.2d 838, 843 (N.C. App. 2000). Here, Defendant attacks Plaintiff's ability to allege the first element: the existence of a valid contract. After reviewing Plaintiff's Complaint and accepting as true all factual allegations contained therein, the Court finds that no facts exist to conclusively determine that the agreements are invalid or that Plaintiff acted as a broker as a matter of law.

The Court finds that Plaintiff pleads the existence of a valid contract. Plaintiff alleged that it entered into an agreement with Defendant and produced signed exhibits as proof. (Doc. Nos. 1, 1-1, 1-2, 15-1). Defendant attacks these agreements as invalid on their face because Plaintiff violated the registration requirements of the SEA. In support of its argument, Defendant points out that the Agreement goes so far as to contemplate the necessity of a broker/dealer if certain transactions were to take place. (Doc. No. 19 at 67); see also (Doc. No. 1-1 at 6). However, this does not necessarily mean that such a broker/dealer was in fact necessary. Plaintiff's Complaint merely alleges that it aided Defendant with financial advisory services pursuant to the Agreement. (Doc. No. 1 ¶6). The Agreement then lists the services Plaintiff would provide Defendant in their search for parties that would eventually form a financing agreement with Defendant. After construing the Complaint in the light most favorable to Plaintiff, the Court draws a reasonable inference that Plaintiff's conduct within the Agreement could fall within an exception to the SEA registration requirement. Mylan Labs, Inc., 7 F.3d at 1134. Plaintiff has consistently maintained that its conduct fits within the confines of the "finder" exception to the SEA which has been recognized by various courts and in the No Action Letter, (Doc. No. 14-1), Plaintiff has provided.

That No Action Letter allegedly supports Plaintiff's contention that its actions pursuant to the agreements with Defendant did not violate the SEA. (Doc. Nos. 13 at 8, 15; 13-1; 26 at 2; 27 at 10–11).

The Court also notes that, even if Plaintiff violated the SEA, contracts are rendered invalid only at the option of the innocent party. See Mills v. Electric Auto-Lite Co., 396 U.S. 375, 386–87 (1970). Plaintiff's Complaint does not state that Defendant rescinded the agreements. In fact, Defendant never argues that it rescinded the agreement. Rather, Defendant continually misinterprets Section 29(b) of the SEA as rendering the agreements void *per se*. See (Doc. No. 19 at 8) (arguing that the agreements with Plaintiff are "void on their face").

B. Plaintiff's Failure to Meet the Terms of the Agreements

Next, Defendant attacks Plaintiff's allegations as to the second element for a breach of contract: whether a breach of the terms occurred. Poor, 530 S.E.2d at 843. In doing so, Defendant argues that, assuming the agreements are valid, Plaintiff's financing fee is only triggered by the "closing" of a financing agreement, which it then defines as the actual receipt of cash by Defendant. (Doc. No 19 at 8). Defendant alleges that it never received "cash." Rather, Defendant argues that Concord Energy Partners, LLC and Rhode Island Energy Partners, LLC—entities Defendant claims are not "affiliates" or "subsidiaries" as defined by the Agreement—received cash as defined by the agreement. (Id.); see also (Doc. No. 7 at 13–14).

Defendant's construction is circular, relying on its own recitation of facts alleged in its answer. (Doc. No. 7 ¶14)). When ruling on a defendant's motion to dismiss, however, a judge must accept as true all of the factual allegations contained in the complaint. Erickson, 551 U.S. at 93-94. Any factual allegations contained in an answer are only taken as true if they do not conflict with the complaint and have not been denied by plaintiff. Alexander, 801 F. Supp. 2d at 433.

Here, there exists a factual dispute between the parties as to the interpretation of the terms of the Agreement and their application to Defendant and other entities involved within the financing of the RI and NC Projects. Specifically, Defendant and Plaintiff disagree as to whether Concord Energy Partners, LLC and Rhode Island Energy Partners, LLC were affiliates or subsidiaries of Defendant. *Compare* (Doc. No. 7 ¶14), *with* (Doc. No. 15 ¶14). The Court therefore cannot grant Defendant's judgment on the pleadings under the argument that Plaintiff's Complaint fails to allege a breach of the terms of the Agreement and Letter Agreement.

### C. Plaintiff Was Over-Paid by Defendant

Defendant also argues that it is entitled to a judgment on the pleadings because, even if the terms of the Agreement allowed for payment, Defendant nonetheless paid more than the $800,000 balance within the Letter Agreement. (Doc. No. 19 at 9). Defendant argues that it has already paid a total of $833,333.33 (two payments of $300,000 and $533,333.33) and therefore should be rewarded a judgment for the amount of $33,333.33. (Id.). Plaintiffs respond, arguing that the Letter Agreement pertained only to the payment of the RI Project—not the total amount owed between both the RI and NC Projects. (Doc. No. 27 at 19). Plaintiff maintains that, through its complaint, Defendant owes a total of $1,640,561 for the NC Project alone, of which Defendant has paid $300,000. (Id.) (citing Doc. No. 1 ¶9). The RI Project, on the other hand, had a balance of approximately $800,000, of which Defendant paid $533,333.33 toward. (Id.) (citing Doc. No. 1 ¶¶ 12, 16). The Letter Agreement, Plaintiff maintains, was alleged to have broken down the RI Project's $800,000 balance into installments and grant 7,000,000 warrants to Plaintiff. (Id.) (citing Doc. No. 1 ¶¶ 13–14).

Accepting as true all factual allegations of Plaintiff's complaint, the Court finds it clear that Plaintiff alleged the Letter Agreement to pertain only to the RI Project's outstanding balance.

Paragraph 13 of Plaintiff's complaint clearly alleges that issues arose over the payment of the RI Project's financing fee and, as a result, the parties entered into the Letter Agreement. (Doc. No. 1 ¶13). Paragraph 14 then explicitly states:

> Pursuant to the Letter Agreement, Blue Sphere agreed to pay and Plaintiff agreed to accept payment of the RI Project Financing Fee on the following terms:
> a. A total cash payment of $800,000 paid in installments over an agreed upon period of time as set forth in in the Letter Agreement; and
> b. The grant of 7,000,000 warrants to purchase 7,000,000 shares of common stock in Blue Sphere at the price of $0.05 per share

(Id. ¶14). Simply put, Defendant unreasonably misconstrues Plaintiff's allegations to mean that the Letter Agreement wiped clean the balance of both the RI and NC Projects only to replace them with a grand total of $800,000 owed. Defendant's reading of the Plaintiff's Complaint is skewed. The Letter Agreement, attached to Plaintiff's Complaint as Exhibit 1-2, is titled "Orbit Energy Rhode Island Arranger Fees." (Doc. No. 1-2). Reading Plaintiff's Complaint, Defendant owes a grand total of $2,440,561 between the two projects, to which $833,333.33 has been paid. The Court therefore does not find that Plaintiff's claim for declaratory judgment must be dismissed at this time.

   D. Plaintiff's Declaratory Judgment Action

Lastly, Defendant argues that Plaintiff's declaratory judgment action as to Plaintiff's right to purchase Blue Sphere common stock as stipulated in the Letter Agreement should be dismissed. (Doc. No. 19 at 9). To support this argument, Defendant asserts that there is no controversy because Plaintiff has not attempted to exercise the stock warrants supposedly granted in the Letter Agreement. Plaintiff responds by arguing that it did, in fact, demand from Defendant the exercise of the stock warrants. To begin with, Plaintiff notes that Defendant failed to supply any authority or facts in the record to explain its position. (Doc. No. 27 at 21). Then Plaintiff references

Defendant's own letter attached to its Memorandum in Opposition to Dismiss Counterclaims, (Doc. No. 20-1). (Id.). In this letter, Defendant responds to its previous correspondence with Plaintiff which included a draft complaint to this very action. On the second page of this letter, Plaintiff points to Defendant's reference to Plaintiff's previous demand to exercise the stock warrants. (Id.) (citing (Doc. No. 20-1 at 2)).

Defendant points to nothing in the record suggesting that there is no controversy between Plaintiff and Defendant regarding the exercise of the stock warrants. In Plaintiff's Complaint, it is alleged that a valid agreement was created by way of the Letter Agreement to grant Plaintiff the right to purchase 7,000,000 shares of common stock in Blue Sphere. (Doc. No. 1 ¶ 14). Furthermore, Plaintiff emphasizes that a controversy exists because Defendant had previously asserted that "among other things, that the grant of the warrants in the Letter Agreement lacked sufficient consideration and is therefore unenforceable." (Id. ¶ 48).

## IV. CONCLUSION

Defendant fails to prove that, upon alleged facts and admissions, Plaintiff failed to state a claim for either breach of contract or declaratory judgment that are plausible on their face. The controversy over Plaintiff's alleged violation of Section 15 of the SEA is a fact-intensive inquiry, and the Court cannot weigh facts or assess evidence at this stage of the litigation. Rather, the Court must view the Complaint in the light most favorable to Plaintiff and take into account factual allegations within Defendant's answer only if they do not conflict with Plaintiff's complaint.

**IT IS, THEREFORE, ORDERED** that**:**

1. Defendant's Motion for Judgment on the Pleadings is **DENIED**.

Signed: March 30, 2018

Robert J. Conrad, Jr.
United States District Judge